**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CASEY CHRISTENSEN, SCOTT DENNIS, ADAM BUEHRENS, BRIAN DEPPERSCHMIDT, on behalf of themselves and all others similarly situated,

    Plaintiffs,

  v.

BUMBLE BEE FOODS, LLC, STARKIST COMPANY, TRI-UNION SEAFOODS LLC, and KING OSCAR, INC.,

    Defendants.

No. C 15-04093 WHA

**NOTICE REGARDING FACTORS TO BE EVALUATED FOR ANY PROPOSED CLASS SETTLEMENT**

For the guidance of counsel, please review the *Procedural Guidance for Class Action Settlements*, which is available on the website for the United States District Court for the Northern District of California at www.cand.uscourts.gov/ClassActionSettlementGuidance.

In addition, counsel should review the following substantive and timing factors that the undersigned judge will consider in determining whether to grant preliminary and/or final approval to a proposed class settlement. Many of these factors have already been set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011), but the following discussion further illustrates the undersigned judge's consideration of such factors:

**1.    ADEQUACY OF REPRESENTATION.**

Anyone seeking to represent a class, including a settlement class, must affirmatively meet the Rule 23 standards, including adequacy. It will not be enough for a defendant to stipulate to

1  adequacy of the class representation (because a defendant cannot speak for absent class
2  members). An affirmative showing of adequacy must be made in a sworn record. Any possible
3  shortcomings in a plaintiff's resume, such as a conflict of interest, a criminal conviction, a prior
4  history of litigiousness, and/or a prior history with counsel, must be disclosed. Adequacy of
5  counsel is not a substitute for adequacy of the representative.

6  To elaborate, when a settlement proposal is made prior to formal class certification, there
7  is a risk that class claims have been discounted, at least in part, by the risk that class certification
8  might be denied. Absent class members, of course, should be subject to normal discounts for
9  risks of litigation on the merits but they should not be subject to a further discount for a risk of
10 denial of class certification, such as, for example, a denial based on problems with a proposed
11 class representative, including a conflict of interest or a prior criminal conviction. This is a main
12 reason the Court prefers to litigate and vet a class certification motion *before* any settlement
13 discussions take place. That way, the class certification is a done deal and cannot compromise
14 class claims. Only the risks of litigation on the merits can do so.

15 **2. DUE DILIGENCE.**

16 Please remember that when one undertakes to act as a fiduciary on behalf of others (here,
17 the absent class members), one must perform adequate due diligence before acting. This
18 requires the representative and his or her counsel to investigate the strengths and weaknesses of
19 the case, including the best-case dollar amount of claim relief. A quick deal up front may not be
20 fair to absent class members.

21 **3. COST-BENEFIT FOR ABSENT CLASS MEMBERS.**

22 In the proposed settlement, what will absent class members give up versus what will they
23 receive in exchange, *i.e.*, a cost-benefit analysis? If the recovery will be a full recovery, then
24 much less will be required to justify the settlement than for a partial recovery, in which case the
25 discount will have to be justified. The greater the discount, the greater must be the justification.
26 This will require an analysis of the specific proof, such as a synopsis of any conflicting evidence
27 on key fact points. It will also require a final class-wide damage study or a very good substitute,
28 in sworn form. If little discovery has been done to see how strong the claim is, it will be hard to

justify a substantial discount on the mere generalized theory of "risks of litigation." A coupon settlement will rarely be approved. Where there are various subgroups within the class, counsel must justify the plan of allocation of the settlement fund.

### 4. THE RELEASE.

The release should be limited only to the claims certified for class treatment. Language releasing claims that "could have been brought" is too vague and overbroad. The specific statutory or common law claims to be released should be spelled out. Class counsel must justify the release as to each claim released, the probability of winning, and its estimated value if fully successful.

Does the settlement contemplate that claims of absent class members will be released even for those whose class notice is returned as undeliverable? Usually, the Court will *not* extinguish claims of individuals known to have received no notice or who received no benefit (and/or for whom there is no way to send them a settlement check). Put differently, usually the release must extend only to those who receive money for the release.

### 5. EXPANSION OF THE CLASS.

Typically, defendants vigorously oppose class certification and/or argue for a narrow class. In settling, however, defendants often seek to expand the class, either geographically (*i.e.*, nationwide) or claim-wise (including claims not even in the complaint) or person-wise (*e.g.*, multiple new categories). Such expansions will be viewed with suspicion. If an expansion is to occur it must come with an adequate plaintiff and one with standing to represent the add-on scope and with an amended complaint to include the new claims, not to mention due diligence as to the expanded scope. The settlement dollars must be sufficient to cover the old scope plus the new scope. Personal and subject-matter jurisdiction over the new individuals to be compromised by the class judgment must be shown.

### 6. REVERSION.

A settlement that allows for a reversion of settlement funds to the defendant(s) is a red flag, for it runs the risk of an illusory settlement, especially when combined with a requirement to submit claims that may lead to a shortfall in claim submissions.

### 7. CLAIM PROCEDURE.

A settlement that imposes a claim procedure rather than cutting checks to class members for the appropriate amount may (or may not) impose too much of a burden on class members, especially if the claim procedure is onerous, or the period for submitting is too short, or there is a likelihood of class members treating the notice envelope as junk mail. The best approach, when feasible, is to calculate settlement checks from a defendant's records (plus due diligence performed by counsel) and to send the checks to the class members along with a notice that cashing the checks will be deemed acceptance of the release and all other terms of the settlement.

### 8. ATTORNEY'S FEES.

To avoid collusive settlements, the Court prefers that all settlements avoid any agreement as to attorney's fees and leave that to the judge. If the defense insists on an overall cap, then the Court will decide how much will go to the class and how much will go to counsel, just as in common fund cases. Please avoid agreement on any division, tentative or otherwise. A settlement whereby the attorney seems likely to obtain funds out of proportion to the benefit conferred on the class must be justified.

### 9. DWINDLING OR MINIMAL ASSETS?

If the defendant is broke or nearly so with no prospect of future rehabilitation, a steeper discount may be warranted. This must be proven. Counsel should normally verify a claim of poverty via a sworn record, thoroughly vetted.

### 10. TIMING OF PROPOSED SETTLEMENT.

In order to have a better record to evaluate the foregoing considerations, it is better to develop and to present a proposed compromise *after* class certification, *after* diligent discovery on the merits, and *after* the damage study has been finalized. On the other hand, there will be some cases in which it will be acceptable to conserve resources and to propose a resolution sooner. For example, if the proposal will provide full recovery (or very close to full recovery)

4

then there is little need for more due diligence. The poorer the settlement, however, the more justification will be needed and that usually translates to *more* discovery and *more* due diligence; otherwise, it is best to let absent class members keep their own claims and fend for themselves rather than foist a poor settlement on them. Particularly when counsel propose to compromise the potential claims of absent class members in a low-percentage recovery, the Court will insist on a detailed explanation of why the case has turned so weak, an explanation that usually must flow from discovery and due diligence, not merely generalized "risks of litigation." Counsel should remember that merely filing a putative class complaint does not authorize them to extinguish the rights of absent class members. *If counsel believe settlement discussions should precede a class certification, a motion for appointment of interim class counsel must first be made.* "[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 11. A RIGHT TO OPT OUT IS NOT A CURE-ALL.

A borderline settlement cannot be justified merely because absent class members may opt out if they wish. The Court has (and counsel have) an independent, stand-alone duty to assess whether the proposed settlement is reasonable and adequate. Once the named parties reach a settlement in a purported class action, they are always solidly in favor of their own proposal. There is no advocate to critique the proposal on behalf of absent class members. That is one reason that Rule 23(e) insists that the district court vet all class settlements.

### 12. INCENTIVE PAYMENT.

If the proposed settlement by itself is not good enough for the named plaintiff, why should it be good enough for absent class members similarly situated? Class litigation proceeded well for many decades before the advent of requests for "incentive payments," which too often are simply ways to make a collusive or poor settlement palatable to the named plaintiff. A request for an incentive payment is a red flag.

### 13. NOTICE TO CLASS MEMBERS.

Is the notice in plain English, plain Spanish, and/or plain Chinese (or the appropriate language)? Does it plainly lay out the salient points, which are mainly the foregoing points in

this memorandum? Will the method of notice distribution really reach every class member? Will it likely be opened or tossed as junk mail? How can the envelope design enhance the chance of opening? Can mail notice be supplemented by e-mail notice?

\*         \*         \*

Counsel will please see from the foregoing that the main focus will be on what is in the best interest of absent class members. Counsel should be mindful of the factors identified in *In re Bluetooth*, 654 F.3d at 946–47, as well as the fairness considerations detailed in *Hanlon*, 150 F.3d at 1026. *See also* Howard Erichson, *Beware The Settlement Class Action*, DAILY JOURNAL, Nov. 24, 2014. Finally, for an order denying proposed preliminary approval based on many of the foregoing considerations, *see Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007).

Dated: September 10, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE